1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

ANA WHITLOW, Individually and as
Parent and Next Friend of B.A.W. and
D.M. F.-W., minor children, *et al.*,

11

12

Plaintiffs,

13

v.

14

STATE OF CALIFORNIA,
Department of Education, *et al.*,

15

Defendants.

CASE NO. 16cv1715 DMS (MDD)

**ORDER DENYING PLAINTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION**

16
17

This case involves a challenge to California's Senate Bill ("SB") 277, which

18

repealed the personal belief exemption ("PBE") to California's immunization

19

requirements for children entering public and private educational and child care

20

facilities in the State. Plaintiffs are a group of seventeen parents and their children that

21

reside throughout the State of California, and four non-profit corporations. Defendants

22

include the California Department of Education and Department of Public Health,

23

among others. In their First Amended Complaint ("FAC"), Plaintiffs allege SB 277

24

violates their federal and state constitutional rights and federal and state statutory law.

25

On July 15, 2016, Plaintiffs filed the present motion seeking to preliminarily

26

enjoin the State from enforcing SB 277. In support of the motion, Plaintiffs allege SB

27

277 violates their rights to free exercise, equal protection, due process and education,

28

as well as the Individuals with Disabilities in Education Act ("IDEA"), Section 504 of

the Rehabilitation Act of 1973 ("Section 504") and the Americans with Disabilities Act ("ADA").  Defendants filed responses to the motion, and Plaintiffs filed a reply.

The motion came on for hearing on August 12, 2016.  James S. Turner, Kimberly Rosenberg, Robert Moxley, Betsy Lehrfeld and Carl Lewis appeared for Plaintiffs, Jonathan Rich and Jacquelyn Young appeared for the State Defendants and Mary Pat Barry appeared for Defendants Takashi Wada, M.D. and Charity Dean, M.D.[1]

# I.

# BACKGROUND

SB 277 was enacted on June 30, 2015.  In enacting SB 277, the California Legislature declared its intent was:

to provide:

(a) A means for the eventual achievement of total immunization of appropriate age groups against the following childhood diseases:

(1) Diphtheria.

(2) Hepatitis B.

(3) Haemophilus influenzae type b.

(4) Measles.

(5) Mumps.

(6) Pertussis (whooping cough).

(7) Poliomyelitis.

(8) Rubella.

(9) Tetanus.

(10) Varicella (chickenpox).

Cal. Health & Safety Code § 120325(a)(1)-(10).  SB 277 amended this section of the California Health and Safety Code to declare the Legislature's intent, but otherwise left

---

[1] Defendants Wada and Dean are named in their official capacities as employees of the Santa Barbara County Department of Public Health.  The present motion does not seek preliminary injunctive relief against those Defendants, and thus the Court does not address Plaintiffs' claims against them in this Order.

undisturbed the prior law's vaccination requirements for school-aged children in California. In particular, SB 277 removed a parent's ability under prior law to opt-out of the State's vaccination requirements based on that parent's personal beliefs.[2] The law now provides that if a parent had on file or filed a PBE prior to January 1, 2016, his or her child could be enrolled in school or day care, unless that child was at a "checkpoint," *i.e.*, was a first-time enrollee in day care or kindergarten or was enrolling in the seventh grade. Cal. Health & Safety Code § 120335(g). Those first-time enrollees and students entering seventh grade are no longer allowed admission to the State's public and private schools and day care centers unless they have complied with the vaccination requirements. Cal. Health & Safety Code § 120335(g)(3). Plaintiffs estimate there are 33,000 children that fall into this category, and are being denied enrollment as a result of SB 277.

SB 277 provides three exemptions to the vaccination requirements at issue: One for medical reasons, Cal. Health & Safety Code § 120370(a), one for children in a 'home-based private school or ... an independent study program[,]" Cal. Health & Safety Code § 120335(f), and one for students who qualify for an individualized education program, or IEP. Cal. Health & Safety Code § 120335(h).

## II.

## DISCUSSION

For more than 100 years, the United States Supreme Court has upheld the right of the States to enact and enforce laws requiring citizens to be vaccinated. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27 (1905); *Zucht v. King,* 260 U.S. 174 (1922). In 1902, the Board of Health in Cambridge, Massachusetts enacted a regulation to that effect, and the State thereafter filed a criminal complaint against Mr.

/ / /

---

[2]   The law provided, "Immunization of a person shall not be required for admission to school ... if the parent or guardian ... files with the governing authority a letter or affidavit that documents which immunizations required by [law] have been given, and which immunizations have not been given on the basis that they are contrary to his or her beliefs." Cal. Health & Safety Code § 120365 (repealed by SB 277).

Jacobson for failing to comply with the regulation.  In his defense, Mr. Jacobson argued that the law was unconstitutional.  In particular, he argued,

> that his liberty is invaded when the State subjects him to fine or imprisonment for neglecting or refusing to submit to vaccination; that a compulsory vaccination law is unreasonable, arbitrary and oppressive, and therefore, hostile to the inherent right of every freeman to care for his own body and health in such a way as to him seems best; and that the execution of such a law against one who objects to vaccination, no matter for what reason, is nothing short of an assault upon his person.

197 U.S. at 26.  The Court rejected that argument.  Speaking for the Court, Mr. Justice Harlan stated,

> the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good.  On any other basis organized society could not exist with safety to its members.  Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy. Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others.  This court has more than once recognized it as a fundamental principle that "persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health, and property of the State; of the perfect right of the legislature to do which no question ever was, or upon acknowledged general principles ever can be made, so far as natural persons are concerned."

*Id.* (citations omitted).  The Court further stated, "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members[,]" *id.* at 27, and "it was the duty of the constituted authorities primarily to keep in view the welfare, comfort, and safety of the many, and not permit the interests of the many to be subordinated to the wishes or convenience of the few." *Id.* at 29.  The Court concluded that the statute was a proper exercise of the legislative prerogative and that it did not deprive Mr. Jacobson of his constitutional guarantees of personal and religious liberty.

Seventeen years later, the Court considered another mandatory vaccination law, this time one aimed at schoolchildren.  *Zucht,* 260 U.S. 174.  There, the plaintiff's children were excluded from a Texas public school because they were not vaccinated. The plaintiff argued that the laws violated her rights to due process and equal

protection under the United States Constitution, but the Court rejected those arguments.  Relying on *Jacobson*, the Court stated it was long-ago "settled that it is within the police power of a State to provide for compulsory vaccination." *Id.* at 176.

Even outside the context of vaccination laws, the Supreme Court has reiterated that fundamental rights under the First Amendment to the United States Constitution do not overcome the State's interest in protecting a child's health.  Specifically, in *Prince v. Massachusetts*, 321 U.S. 158 (1944), the Court stated:  "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." *Id.* at 166-67.

Although the Ninth Circuit has yet to decide a case involving a challenge to a mandatory vaccination law, two other Circuits and the California Supreme Court have decided such cases. *Phillips v. City of New York*, 775 F.3d 538 (2d Cir.), *cert. denied*, ___ U.S. ___, 136 S. Ct. 104 (2015); *Workman v. Mingo County Bd. of Ed.*, 419 Fed. Appx. 348, 356 (4th Cir. 2011); *Abeel v. Clark,* 84 Cal. 226 (1890).  In *Workman*, the plaintiff argued that a local school board in West Virginia violated her rights to free exercise, equal protection and substantive due process when it refused to admit her daughter to public school without the immunizations required by state law.  The court rejected all of those arguments, relying principally on *Jacobson*, *Zucht* and *Prince*.  In *Phillips*, the plaintiffs argued that a New York law requiring mandatory vaccination of school children violated their rights to due process, free exercise and equal protection.  As in *Workman*, the court rejected the plaintiffs' substantive due process claim, stating it was "foreclosed by the Supreme Court's decision in *Jacobson*[.]" 775 F.3d at 542.  The court also rejected the plaintiffs' free exercise claim, following the reasoning of *Workman*, "that a parent 'cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds.  The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death.'" *Id.* at 543 (quoting *Prince*, 321 U.S. at 166-67).  The court then affirmed the dismissal of the plaintiffs'

1   equal protection claim for failure to state a claim.  In *Abeel,* the California Supreme

2   Court upheld the State's mandatory vaccination law as a proper exercise of police

3   powers under the California Constitution, allowing a public school to exclude a child

4   who had not been vaccinated in accordance with the law.  84 Cal. at 230.

5        In light of these cases, Plaintiffs here deny they are challenging the State's right

6   to compel vaccination of its schoolchildren.  Rather, they assert they are challenging

7   the State's decision to eliminate the PBE.  However, reframing the case in those terms

8   does not bolster Plaintiffs' position because it is clear that the Constitution does not

9   require the provision of a religious exemption to vaccination requirements, much less

10  a PBE.  *See Phillips*, 775 F.3d at 543 (stating "New York law goes beyond what the

11  Constitution requires by allowing an exemption for parents with genuine and sincere

12  religious beliefs."); *Workman*, 419 Fed. Appx. at 355 (agreeing with district court that

13  "although a state may provide a religious exemption to mandatory vaccination, it need

14  not do so."); *Wright v. De Witt School Dist.*, 385 S.W.2d 644 (Ark. 1965) (rejecting

15  challenge to mandatory vaccination law on ground it did not include religious

16  exemption).

17       Finally, the Court notes that although the decision to eliminate the PBE, which

18  had been in existence for decades, raises principled and spirited religious and

19  conscientious objections by genuinely caring parents and concerned citizens, the

20  wisdom of the Legislature's decision is not for this Court to decide.  *Jacobson,* 197

21  U.S. at 30 (stating the existence of medical opinion attaching little or no value to

22  vaccination as a means of preventing spread of smallpox was of no moment; it was for

23  the Legislature, and not the court, to determine the most effective method of protecting

24  the public against disease).  The objections and concerns with SB 277 were presented

25  to the Legislature, and it decided to proceed with the law over those objections.

26  Whether those objections were valid is not for this Court to decide.  Rather, this Court

27  is concerned only with whether the law is constitutional.  With this background in

28  mind, the Court turns to the specific facts and claims in this case, and the important

question of whether Plaintiffs are entitled to a preliminary injunction barring enforcement of SB 277.

**A.    Legal Standard**

A party seeking injunctive relief under Federal Rule of Civil Procedure 65 must show "'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

**B.    Likelihood of Success**

Plaintiffs rely only on constitutional and federal statutory claims in the present motion. Plaintiffs assert they have shown a likelihood of success on each of these claims, which supports the issuance of a preliminary injunction. The Court addresses these claims in the order in which they were pleaded in the First Amended Complaint.

1.    Free Exercise

The first claim at issue here is the Parent Plaintiffs' claim that SB 277 violates their right to free exercise of religion under the First Amendment to the United States Constitution.[3] Specifically, Plaintiffs contend SB 277 violates their right to free exercise by (1) failing to provide a religious exemption to the vaccine mandate, (2) forcing parents to choose between the dictates of their faith and their children's

---

[3] The Court notes that only Plaintiffs Whitlow, Nicolaisen, Schultz-Alva, Andrade, Crain and Kennedy have religious objections to the vaccine mandate. To the extent any of the other individual Plaintiffs have objections to the mandate based on their personal, as opposed to religious beliefs, those beliefs are not protected by the First Amendment. *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972) ("A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular consideration; to have the protection of the Religion Clauses, the claims must be rooted in religious beliefs.")

1  education, and (3) offering secular exemptions (medical, home schooling and IEP)

2  while refusing to provide a religious exemption.[4]

3       The cases discussed above, particularly *Workman*, *Phillips*, and by extension,

4  *Prince*, demonstrate that Plaintiffs are unlikely to succeed on the first aspect of their

5  claim.  As stated in *Prince*, the right to free exercise does not outweigh the State's

6  interest in public health and safety.  321 U.S. at 166-67 ("The right to practice religion,

7  freely does not include liberty to expose the community or the child to communicable

8  disease or the latter to ill health or death.")  Both the Second and Fourth Circuits have

9  explicitly rejected the claim raised here, *see Phillips*, 775 F.3d at 543 (finding

10 "mandatory vaccination as a condition for admission to school does not violate the Free

11 Exercise Clause"); *Workman*, 419 Fed. Appx. at 352-54 (same), as have state courts

12 in Maryland, *Davis v. State*, 294 Md. 370, 379 (1982) (finding state need not "provide

13 a religious exemption from its immunization program."), and Arkansas.  *Cude v. State*,

14 237 Ark. 927, 932 (1964) (stating smallpox vaccine mandate did "not violate the

15 constitutional rights of anyone, on religious grounds or otherwise.")  In light of these

16 cases, which this Court finds persuasive, Plaintiffs are unlikely to succeed on their

17 claim that SB 277 violates their right to free exercise because it fails to include a

18 religious exemption.

19 / / /

20 _____

21      [4]  The parties disagree on the standard of review for Plaintiffs' free exercise claim, with Plaintiffs arguing for strict scrutiny and Defendants for rational basis.  The

22 Supreme Court has stated that "a neutral law of general application need not be supported by a compelling government interest even when 'the law has the incidental

23 effect of burdening a particular religious practice.'"  *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075-76 (9th Cir.), *cert. denied*, ___ U.S. ___, 136 S.Ct. 2433 (2016),

24 (quoting *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993)).  Rather, "[s]uch laws need only survive rational basis review." *Id.* at 1076 (citing *Miller*

25 *v. Reed*, 176 F.3d 1202, 1206 (9th Cir. 1999)).  Plaintiffs do not dispute that SB 277 is a neutral law of general application, which would therefore be subject to rational basis

26 review.  Instead, they argue they are asserting "hybrid rights," which warrants strict scrutiny.  However, "[t]he 'hybrid rights' doctrine has been widely criticized, and,

27 notably, no court has ever allowed a plaintiff to bootstrap a free exercise claim in this manner." *Jacobs v. Clark County Sch. Dist.*, 526 F.3d 419, 440 n.45 (9th Cir. 2008)

28 (citations omitted).  Following that directive, this Court declines to apply the "hybrid rights" doctrine to Plaintiffs' free exercise claim, and thus declines to apply strict scrutiny.

1    Plaintiffs are also unlikely to succeed on their claim that SB 277 violates their

2    rights to free exercise because it forces them to choose between exercising their

3    religious beliefs and their children's education.  As stated in *Prince,* the right to

4    practice religion does not "include liberty to expose the community or the child to

5    communicable disease or the latter to ill health or death."  321 U.S. at 166-67.

6         The final aspect of Plaintiffs' Free Exercise claim is that SB 277 violates the

7    First Amendment because it provides secular exemptions but fails to provide a

8    religious exemption.  In support of this claim, Plaintiffs rely on *Employment Div.,*

9    *Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990).  However,

10   nowhere in that case does the Supreme Court state that if the government provides a

11   secular exemption to a law or regulation that it must also provide a religious

12   exemption.  Indeed, a majority of the Circuit Courts of Appeal have "refused to

13   interpret *Smith* as standing for the proposition that a secular exemption automatically

14   creates a claim for a religious exemption." *Grace United Methodist Church v. City of*

15   *Cheyenne*, 451 F.3d 643, 651 (10th Cir. 2006).  Thus, Plaintiffs have not shown a

16   likelihood of success on their free exercise claim.

17        2.   Equal Protection

18        Next, Plaintiffs allege SB 277 violates their rights to equal protection.

19   Specifically, Plaintiffs allege SB 277 treats children with PBEs differently from other

20   children in denying the former an education, and it treats children with PBEs who have

21   reached "checkpoints" differently from children with PBEs who are not at

22   "checkpoints" in excluding the former from school.  Plaintiffs also claim that SB 277

23   treats children with IEPs differently from section 504 children in providing an

24   exemption from the vaccination mandate for the former but not the latter.[5]

25

26        [5]  Plaintiffs also raise an as-applied equal protection challenge to the IEP
     exemption, arguing that some school districts are admitting children with IEPs while
27   others are not.  Based on the facts alleged in the First Amended Complaint, it appears
     two of the Plaintiff Children with IEPs may be being denied enrollment because they
28   are advancing to the seventh grade. (*See* FAC ¶¶ 16, 18.) The third Plaintiff Child with
     an IEP is not in that situation, but has apparently been denied enrollment.  (*Id.* ¶ 22.)

1   "The Equal Protection Clause does not forbid classifications.  It simply keeps

2   governmental decision makers from treating differently persons who are in all relevant

3   respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (citing *F.S. Royster Guano*

4   *Co. v. Virginia*, 253 U.S. 412, 415 (1920)).  "'Evidence of different treatment of unlike

5   groups does not support an equal protection claim.'"  *Wright v. Incline Village Gen.*

6   *Improvement Dist.*, 665 F.3d 1128, 1140 (9th Cir. 2011).

7   Here, none of the disputed classifications supports an equal protection claim.

8   First, children with PBEs are not similarly situated to children without PBEs.  Nor are

9   children at "checkpoints" similarly situated to children not at "checkpoints."  And the

10  same may be said of children with IEPs versus those without.  In each of those

11  categories, the children are not similarly situated, which dooms Plaintiffs' equal

12  protection claim.

13  Moreover, even if these children were similarly situated, these classifications

14  would not violate the equal protection clause.  Plaintiffs have failed to show that

15  children with PBEs, children at "checkpoints," and section 504 children are members

16  of a suspect class.[6]  Plaintiffs have also failed to show that these classifications burden

17  a fundamental right.[7]  Thus, these classifications would be subject to rational basis

18  review, not strict scrutiny.  *Id.* at 1141.

19   Under the rational basis test,

20      the Equal Protection Clause is satisfied so long as there is a plausible
        policy reason for the classification, the legislative facts on which the
21      classification is apparently based rationally may have been considered to
        be true by the governmental decisionmaker, and the relationship of the
22      classification to its goal is not so attenuated as to render the distinction
        arbitrary or irrational.

23

24  These as-applied challenges, however, are not at issue in the present motion. Therefore,
    the Court does not address them further.
25

26  [6]  Intellectual disability is not a suspect class.  *See City of Cleburne, Tex. v.*
    *Cleburne Living Ctr.,* 473 U.S. 432, 442 (1985).

27  [7]  Education is not a fundamental right under the United States Constitution. *See*
28  *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 35 (1973) ("Education,
    of course, is not among the rights afforded explicit protection under our Federal
    Constitution.  Nor do we find any basis for saying it is implicitly so protected.")

1    *Nordlinger*, 505 U.S. at 11 (citations omitted).  That test is met here for each of the

2    classifications alleged above.

3         First, there is a rational basis for treating children with PBEs differently from

4    other children: The former are not completely vaccinated, if at all, while the latter are

5    fully vaccinated.  Allowing the latter to attend school and excluding the former is

6    rationally related to the State's interest in protecting public health and safety.

7         There is also a plausible reason for treating children with PBEs at "checkpoints"

8    differently from children with PBEs outside of "checkpoints."  The "checkpoints"

9    provisions provide a grace period for children with PBEs to remain in their grade span

10   while their parents comply with the new law.  Rather than drawing legislation that

11   would have immediately impacted all children with PBEs (approximately 200,000,

12   according to Plaintiffs), the legislation has a more limited effect by initially focusing

13   only on those children with PBEs who are advancing to the next grade level

14   (approximately 33,000, according to Plaintiffs).  The "checkpoints" provision therefore

15   provides parents with an orderly opportunity to comply with the law and softens the

16   impact of SB 277 through graduated application.  That, of course, is rational.

17        Finally, and assuming Plaintiffs have standing to bring this claim on behalf of

18   students protected by section 504, there is also a rational basis for providing an

19   exemption for children with IEPs as opposed to children protected by section 504.

20   Unlike section 504, which is primarily geared toward preventing discrimination in the

21   provision of state services generally to all individuals with disabilities, *A.G. v.*

22   *Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1203, (9th Cir. 2016) (citing

23   *Mark H. v. Lemaheiu*, 513 F.3d 922, 929 (9th Cir. 2008)), the IDEA is designed to

24   provide disabled students with access to special education and related services in

25   schools.  *Van Duyn v. Baker Sch. Dist.*, 502 F.3d 811, 818 (9th Cir. 2007) (quoting *Bd.*

26   *of Educ. of Henrick Hudson Central Sch. Dist., Westchester County v. Rowley*, 458

27   U.S. 176, 200 (1982)).  The exemption for students with IEPs ensures that right of

28   access, and furthers the State's legitimate interest in providing special education and

1  related services to those students.  *Zucht,* 260 U.S. at 176-77 ("A long line of decisions

2  by this court had also settled classification may be freely applied, and that regulation

3  is not violative of the equal protection clause merely because it is not all-embracing.")

4  For these reasons, Plaintiffs have failed to show a likelihood of success on their equal

5  protection claim.[8]

6      3.   Due Process

7      Next, Plaintiffs' claim that SB 277 violates their rights to due process.

8  Specifically, Plaintiffs allege SB 277 impinges on fundamental liberties by denying

9  children with PBEs the opportunity to attend school and stigmatizing children with

10  PBEs as "vectors of disease," and violating both parental rights regarding decision-

11  making concerning their child's health and education and childrens' rights to bodily

12  integrity.  (FAC ¶ 147.)

13      "The Due Process Clause 'provides heightened protection against government

14  interference with certain fundamental rights and liberty interests.'"  *Workman*, 419

15  Fed. Appx. at 355 (quoting *Washington v. Glucksburg*, 521 U.S. 702, 720 (1997)).

16  Here, however, all of Plaintiffs' arguments are foreclosed by *Zucht,* 260 U.S. at 176

17  (rejecting due process challenge to permanent exclusion of child from public and

18  private school because child did not have required certificate and refused to submit to

19  vaccination).

20

21

22      [8] Plaintiffs' equal protection argument under the California Constitution fails for

23  the same reasons.  As with the federal claim, the Court is not persuaded that heightened scrutiny applies to Plaintiffs' equal protection claim under the California Constitution.

24  While education is a fundamental interest in California, impingement of the right is insufficient to trigger strict scrutiny.  Rather, there must be a showing of "disparate

25  treatment" that has a "real and appreciable impact" on that right.  *Butt v. State of California,* 4 Cal.4th 668, 686 (1992).  The asserted classifications addressed above do

26  not have real and appreciable impact on the right of education and some are foreclosed by law.  *See, e.g., French v. Davidson,* 143 Cal. 658 (1904), which forecloses the

27  argument that distinguishing between vaccinated and unvaccinated children violates the equal protection clause.  Children attending school "occupy a natural class by

28  themselves, more liable to contagion[,] *id.* at 664, thus there is "no element of class legislation" in precluding unvaccinated children from school but allowing vaccinated children to enroll.  *Id.*

1    Unquestionably, imposing a mandatory vaccine requirement on school children

2  as a condition of enrollment does not violate substantive due process.  This case is even

3  one more step removed, as it involves the removal of an exemption that is not required

4  under the law.  The removal of the PBE subjects the children to mandatory vaccination,

5  but the State is well within its powers to condition school enrollment on vaccination.

6  Plaintiffs have not demonstrated a likelihood of success on their due process claim.[9]

7

8         4.    Section 504[10]

9    Although  Plaintiffs  allege  there  are  students  who  require  section  504

10  accommodation, (FAC ¶ 117), they fail to allege those children are not concurrently

11  covered by the IDEA; if those children are covered by the IDEA, they are exempt from

12  vaccination.  Thus, Plaintiffs have not shown a likelihood of success on this claim

13  sufficient to warrant a preliminary injunction.

14         5.  Right of Education

15    The only remaining claim at issue is Plaintiffs' claim that SB 277 violates their

16  right to education under the California Constitution.  The parties do not dispute that

17  education is a fundamental interest under the California Constitution.  *See Butt*, 4 Cal.

18  4th at 685-86 (holding education is a "fundamental interest"); *Serrano v. Priest*, 18 Cal.

19  3d 728, 766 (1976).  Thus, if the right is sufficiently implicated it is subject to

20  heightened review.  *Serrano,* 18 Cal. 3d at 768.  Given Defendants' concession that

21  this claim is subject to heightened review, the Court assumes without deciding that

22  / / /

23

24    [9]  Plaintiffs' due process arguments under the California Constitution fail for the
    same reasons.

25

26    [10]  In their briefs, Plaintiffs also raised their IDEA and ADA claims as bases for
    the present motion.  However, the IDEA and ADA claims involve as-applied challenges

27  rather than facial challenges.  At oral argument, Plaintiffs' counsel stated they were not
    relying on any as-applied arguments in support of the present motion for any claim.

28  Thus, the Court declines to address whether Plaintiffs have shown a likelihood of
    success on their IDEA, ADA or any other claims based on as-applied challenges in
    deciding the present motion.

1    this is the proper standard.  Under that standard, Defendants must show a compelling

2    state interest, and that the law is necessary or narrowly tailored to meet that interest.

3          Here, the right to education is implicated only by the removal of the PBE.

4    Defendants assert that eliminating the PBE serves the compelling societal interest in

5    protecting public health and safety.  There is no question that society has a compelling

6    interest in fighting the spread of contagious diseases through mandatory vaccination

7    of school-aged children.  All courts, state and federal, have so held either explicitly or

8    implicitly for over a century.  *See, e.g., Abeel*, 84 Cal. at 230 ("The legislature has

9    power to enact such laws as it may deem necessary, not repugnant to the constitution

10   to secure and maintain the health and prosperity of the state, by subjecting both person

11   and property to such reasonable restraints and burdens as will effectuate such

12   objects."); *Zucht*, 260 U.S. at 176 (stating it is "settled that it is within the police power

13   of a state to provide for compulsory vaccination."); *Jacobson*, 197 U.S. at 11 ("the

14   police power of a State must be held to embrace, at least, such reasonable regulations

15   established directly by legislative enactment as will protect the public health and the

16   public safety."); *Workman,* 419 Fed. Appx. at 356 (quoting *Sherr v. Northport-East*

17   *Northport Union Free Sch. Dist.,* 672 F.Supp. 81, 88 (E.D.N.Y. 1987)) (holding there

18   is a "'compelling interest of society in fighting the spread of contagious diseases

19   through mandatory inoculation programs.'"); *Brown v. Stone,* 378 So.2d 218, 223

20   (Miss. 1979) (holding "protection of the great body of school children attending the

21   public schools" against diseases through mandatory vaccination serves "compelling

22   public purpose"); *Cude*, 237 Ark. at 932 (1964) (holding mandatory vaccination of

23   school children "does not violate the constitutional rights of anyone, on religious

24   grounds or otherwise."); *Bd. of Ed. v. Maas*, 56 N.J. Super. 245, 164 (1959) (similar);

25   *Viemeister v. White*, 88 A.D. 44, 49, 84 N.Y.S. 712 (1903) (similar).  And it is evident

26   from the text of SB 277 that this was the Legislature's intent in enacting the law.  *See*

27   Cal. Health & Safety Code § 120325 ("In enacting this chapter ... it is the intent of the

28

Legislature to provide: (a) A means for the eventual achievement of total immunization of appropriate age groups against the following childhood diseases: ...")

Faced with this line of cases, Plaintiffs argue this case is distinguishable. Plaintiffs assert the vaccine mandates at issue in some of those cases were enacted during times of outbreaks. As Plaintiffs see it, the existence of an actual outbreak gave the States a compelling reason to enact a vaccine mandate. Here, by contrast, and according to Plaintiffs, there was no similar outbreak, and therefore, California did not have a compelling interest in enacting SB 277. However, the State's interest in protecting the public health and safety, particularly the health and safety of children, does not depend on or need to correlate with the existence of a public health emergency. *See Maricopa County Health Dept. v. Harmon*, 156 Ariz. 161, 166 (1987) (rejecting argument that "there is no compelling state interest in taking limited and temporary steps to combat a reasonably perceived risk of the spread of measles absent a serologically confirmed case[.]"); *Sadlock v. Bd. of Ed.*, 137 N.J.L. 85, 90 (1948) (rejecting argument that compulsory vaccination law could not stand "since at the time of its adoption, there was no epidemic or threatened epidemic of smallpox ... and that, therefore the resolution performed no reasonable exercise of the police power."); *Mosier v. Varren County Bd. of Health*, 308 Ky. 829, 831 (1948) ("the health authorities are not required to wait until an epidemic exists before acting, but it is their duty to adopt timely measures to prevent one."). That interest exists regardless of the circumstances of the day, and is equally compelling whether it is being used to prevent outbreaks or eradicate diseases.

The existence of a compelling state interest, however, is not sufficient, by itself, to satisfy the strict scrutiny standard. Defendants must still show that removal of the PBE was necessary or narrowly tailored to serve society's interest.

Plaintiffs argue removal of the PBE is not narrowly tailored. Specifically, they assert the previous law, which allowed for PBEs, served the same purpose as SB 277 and was a less restrictive means of achieving that purpose. Comparing new law to old,

however, has nothing to do with heightened scrutiny analysis.  Rather, SB 277's removal of the PBE must be examined to determine if it is narrowly tailored to address the identified interest it sets out, here, "a means for the eventual achievement of total immunization" of appropriate school-aged children.  Cal. Health & Safety Code § 120325(a).  However effective the previous law may have been in reducing the PBE rate, that is not the purpose of the current law.  The objective of total immunization is not served by a law that allows for PBEs, whether the PBE rate is 2% or 25%.

Conditioning school enrollment on vaccination has long been accepted by the courts as a permissible way for States to innoculate large numbers of young people and prevent the spread of contagious diseases.  Indeed, "[i]n the 1991-1992 school year, all 50 states required public school students to be vaccinated against diphtheria, measles, rubella, and polio." *Vernonia Sch. Dist 475 v. Acton,* 515 U.S. 646, 656 (1995) (citing U.S. Dept. of Health & Human Services, Public Health Service, Centers for Disease Control, State Immunization Requirements 1991-1992, p.1.)  Moreover, States can impose those vaccination requirements without providing religious or conscientious exemptions.  While removing the PBE is an aggressive step, so, too, is the goal of providing a means for the eventual achievement of total immunization.  An aggressive goal requires aggressive measures, and the State of California has opted for both here.

The right of education, fundamental as it may be, is no more sacred than any of the other fundamental rights that have readily given way to a State's interest in protecting the health and safety of its citizens, and particularly, school children.  Because a personal belief exemption is not required in the first instance, the State can remove it–and impinge on education rights–in light of the compelling interest here.  In this context, removal of the PBE is necessary or narrowly drawn to serve the compelling objective of SB 277.  Plaintiffs have not shown they have a likelihood of success on their claim that SB 277 violates the right to education under California law. / / /

1
    **C.**      **Other Factors**

2
        "When, as here, a party has not shown any chance of success on the merits, no

3
further determination of irreparable harm or balancing of hardships is necessary." 

4
*Global Horizons, Inc. v. United States Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir.

5
2007). "This rule applies with equal force to the public interest element of our

6
preliminary injunction analysis." *Id.* Pursuant to this rule, the Court declines to

7
address the other preliminary injunction factors.

8
        The Court notes, however, that Plaintiffs' delay in filing this case undercuts

9
any assertion of "urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle*

10
*Publishing Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). Although Plaintiffs dispute the

11
effective date of SB 277, the law was approved by the Governor on June 30, 2015, and

12
stated PBEs would not be accepted on or after January 1, 2016. "Where the

13
inevitability of the operation of a statute against certain individuals is patent, it is

14
irrelevant to the existence of a justiciable controversy that there will be a time delay

15
before the disputed provisions will come into effect." *Blanchette v. Connecticut Gen.*

16
*Ins. Corps.,* 419 U.S. 102, 143 (1974). "One does not have to await the consummation

17
of threatened injury to obtain preventive relief. If the injury is certainly impending,

18
that is enough." *Pennsylvania v. West Virginia,* 262 U.S. 553, 593 (1923). Here,

19
Plaintiffs waited until July 1, 2016, to file the present case. That delay appears to have

20
been a tactical decision, and weighs against the issuance of a preliminary injunction in

21
this case.

22
                                **III.**

23
                      **CONCLUSION**

24
        State Legislatures have a long history of requiring children to be vaccinated

25
as a condition to school enrollment, and for as many years, both state and federal courts

26
have upheld those requirements against constitutional challenge. History , in itself,

27
does not compel the result in this case, but the case law makes clear that States may

28
impose mandatory vaccination requirements without providing for religious or

1  conscientious objections.  Although the removal of the PBE here affects a great many

2  people, this Court,

> is not prepared to hold that a minority, residing or remaining in any city or town where [disease] is prevalent, may thus defy the will of its constituted authorities, acting in good faith for all, under the legislative sanction of the State.  If such be the privilege of a minority then a like privilege would belong to each individual of the community, and the spectacle would be presented of the welfare and safety of an entire population being subordinated to the notions of a single individual who chooses to remain a part of that population.

*Jacobson*, 197 U.S. at 37-38.  Over 100 years ago, the Supreme Court was,

> unwilling to hold it to be an element in the liberty secured by the Constitution of the United States that one person, or a minority of persons, residing in any community and enjoying the benefits of its local government, should have the power thus to dominate the majority when supported in their action by the authority of the State.

*Id.* at 38.  In this case, Plaintiffs have not made a showing that they are entitled to the extraordinary remedy of a preliminary injunction.  Accordingly, their motion is respectfully denied.

**IT IS SO ORDERED**.

DATED:  August 26, 2016

_____

HON. DANA M. SABRAW
United States District Judge